2008 UT 87

**Ira SACHS, Plaintiff and Respondent,**

v.

**Joseph S. LESSER, Loeb Investors Co. XL, and United Park City Mines Company, Defendants and Petitioners.**

No. 20070472.

Supreme Court of Utah.

Dec. 16, 2008.

Rehearing Denied April 17, 2009.

Kathryn Collard, Salt Lake City, for plaintiff.

Brandon J. Mark, Anthony C. Kaye, Jason D. Boren, Laura S. Scott, Shane D. Hillman, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case comes to us on certiorari from the court of appeals. Ira Sachs brought this action against United Park City Mines Company (UPCM), Loeb Investors Company (the majority shareholder of UPCM), and Joseph Lesser, president of Loeb Investors and chairman of UPCM, (collectively, Petitioners) to recover a finder's fee for locating a buyer for UPCM, which Sachs claims he did in reliance on a promise made by Lesser.[1] The district court awarded summary judgment to Petitioners, holding that Sachs is statutorily barred from recovery by the Utah Real Estate Broker's Act (UREBA), Utah Code Ann. §§ 61–2–1 to –28 (2006 & Supp.2008),[2] because he did not have a real estate license, and by the statute of frauds because the agreement for a finder's fee was not made in writing, as required for transactions involving real estate. *Id.* §§ 25–5–1 to –9 (2007).[3] The court of appeals reversed, holding that Sachs's claims are not statutorily barred because the sale of the controlling stock in UPCM is not considered a real estate transaction within the meaning of UREBA, which defines real estate as including "business opportunities involving real property," *Id.* § 61–2–2, or within the meaning of real estate in the Utah Statute of Frauds. *Sachs v. Lesser*, 2007 UT App 169, ¶ 54, 163 P.3d 662.

¶ 2 We granted certiorari to determine whether UREBA and the Utah Statute of Frauds bar Sachs's claims for a finder's fee.[4]

## BACKGROUND[5]

¶ 3 In 1999, Lesser asked Sachs, a business consultant in Park City, Utah, to help find a buyer for UPCM. UPCM was a publicly traded company, whose principal business was the leasing, development, and sale of real property located in or near Park City, Utah. UPCM's only asset of significance was its real property—8,300 acres located in or near Park City. Sachs was not licensed as a real estate broker in Utah at any relevant time. During a lunch meeting in New York City, Lesser asked Sachs to find a purchaser or a joint venturer for UPCM. Lesser agreed that Sachs would receive a finder's fee, but no specific amount was discussed. According to Sachs, Lesser later called and told Sachs that he was no longer interested in a joint venture and that he wanted UPCM sold. According to Sachs, he did not offer or agree to find a buyer for UPCM's business assets, or any of its real property assets, but only to find a buyer for the company.

---

1. Another company, Capital Growth Partners, was initially a party to this case but was dismissed after the trial court granted its motion for summary judgment. Sachs does not appeal the trial court's ruling as to this party.

2. Although the Utah Legislature amended UREBA after the initiation of this action, no substantive changes were made to the provisions applicable to this case. Therefore, we refer to the most current codified version.

3. The Utah Legislature amended the Utah Statute of Frauds after the initiation of this action.

However, no substantive changes were made to the provisions applicable to this case, and we therefore refer to the most current codified version.

4. The court of appeals ruled on a number of issues; we granted certiorari on only the two issues stated here.

5. The court of appeals produced a detailed factual summary. We therefore recount only the facts necessary for this decision. *Sachs*, 2007 UT App 169, ¶¶ 2–14, 163 P.3d 662.

¶ 4 After the lunch meeting with Lesser, Sachs spoke with Gerald Jackson, a real estate developer in Park City, Utah about UPCM. Jackson subsequently formed a company, Capital Growth Partners, LLC, that eventually acquired UPCM by purchasing the controlling stock in a complex merger transaction. After the merger, UPCM was the surviving company and retained all of its assets.

¶ 5 Following the merger, Sachs repeatedly attempted to recover a finder's fee from Lesser. Lesser refused to pay Sachs any fee. After failing to obtain payment from UPCM and Lesser, Sachs filed suit to recover the alleged finder's fee owed to him. In his suit, Sachs asserted various claims, including one based on an alleged contract with Petitioners.

### PROCEDURAL HISTORY

¶ 6 Sachs filed his Complaint in January 2004. Petitioners subsequently filed motions for summary judgment based on numerous grounds. First, Petitioners argued that UREBA barred Sachs's claims because Sachs did not have a real estate license at the time of the alleged agreement to find a buyer for UPCM. Petitioners also argued that the statute of frauds barred Sachs's claims, as the alleged contract was not in writing. Petitioners argued that UREBA's definition of real estate should apply under the statute of frauds. In February 2006, the district court entered an Order of Final Judgment granting summary judgment to Petitioners and dismissing Sachs's claims based on express and implied contracts and quantum meruit. The trial court held that Sachs's claims were barred by UREBA as a matter of law because Utah law requires a real estate license to recover a finder's fee in connection with the sale of real estate, which UREBA defines to include "business opportunities involving real estate." The trial court found that because UPCM's only asset of significance was its real property, it fell under the definition of real estate, and because Sachs did not have a real estate license, he could not pursue a claim for a finder's fee under Utah Code section 61–2–18. The trial court also ruled that Sachs's claims were barred by the Utah Statute of Frauds because "the alleged finder's fee agreement relate[d] to the sale or purchase of real estate as the only significant asset owned by [UPCM] ... [and] no writing exist[ed] that would satisfy the requirements of the Utah Statute of Frauds."

¶ 7 Sachs appealed the trial court's ruling to the Utah Supreme Court, which transferred the case to the Utah Court of Appeals. The court of appeals affirmed in part and reversed and remanded in part. *Sachs*, 2007 UT App 169, ¶¶ 54–55, 163 P.3d 662. Of concern to our review, the court of appeals reversed the district court's holdings regarding UREBA and the statute of frauds as to Sachs's implied contract and quantum meruit claims. First, the court of appeals held that UREBA did not bar Sachs's claims. *Id.* ¶ 33. In particular, the court of appeals held that UREBA only required licensing for brokers who find buyers for "business opportunities involving real estate" and that business *opportunities* was no longer defined as existing businesses. *Id.* ¶ 39. Thus, to determine whether an opportunity involved real estate, the court of appeals held that courts must consider the specific character of the opportunity. *Id.* Applying the facts presented, the court of appeals held that the UPCM transaction was not a business opportunity involving real estate because the transaction involved a transfer of corporate stock, rather than corporate assets, which undoubtedly were solely real estate interests. *Id.* ¶¶ 41–42. With these holdings, the court of appeals determined that "summary judgment was improperly granted with respect to Sachs's claim ... because the Act does not require a real estate license to engage in transactions dealing exclusively in corporate stock." *Id.* ¶ 54. Second, the court of appeals held that the statute of frauds does not bar Sachs's claims because the transaction involved personal property, not real property, as explained above. *Id.* ¶ 53. We granted certiorari to review whether UREBA and the Utah Statute of Frauds bar Sachs's claims.

¶ 8 We have jurisdiction over this appeal pursuant to Utah Code section 78A–3–102(3)(a) (Supp.2008).

### STANDARD OF REVIEW

¶ 9 "On certiorari, we review the decision of the court of appeals, not that of

the district court." *State v. Ireland,* 2006 UT 82, ¶ 6, 150 P.3d 532. Determining whether Sachs's claims are barred by either UREBA and the statute of frauds are "legal question[s] of statutory interpretation," which we review for correctness. *State v. Smith,* 2005 UT 57, ¶ 6, 122 P.3d 615.

## ANALYSIS

¶ 10 Petitioners contend that under URE-BA, UPCM should be considered a business opportunity involving real estate, and as a result, Sachs should be barred from recovering a finder's fee because UREBA prohibits the recovery of a finder's fee for finding a buyer of real estate without a real estate license. In contrast, Sachs argues that the term "business opportunity" under UREBA does not include existing businesses. Furthermore, Sachs argues that the court of appeals correctly determined that he is not barred from recovery because he found a purchaser for one hundred percent of UPCM's company stock, which is not real estate under UREBA or the statute of frauds. We conclude that an existing business may constitute a "business opportunity" within the meaning of UREBA. We also conclude that when the transfer of real property is the dominant part of the sale of a business, it falls under UREBA. Accordingly, we hold that UPCM is a "business opportunit[y] involving real estate" within the meaning of UREBA, and therefore reverse the court of appeals' holding. Because URE-BA alone bars Mr. Sachs's claims, we do not reach the statute of frauds issue.

### I. UREBA

■ ¶ 11 Pursuant to UREBA,

> [n]o person may bring or maintain an action in any court ... for the recovery of a commission, fee, or compensation for any act done or service rendered ... which is prohibited under this chapter ... unless the person was duly licensed as a principal broker at the time of the doing of the act or rendering the service.

Utah Code Ann. § 61–2–18(1) (2006). URE-BA further prohibits an unlicensed person from acting in the capacity of a "principal real estate broker," *id.* § 61–2–1, which includes any person "who sells or lists for sale, buys, exchanges, or auctions real estate ...

with the expectation of receiving valuable consideration." *Id.* § 61–2–2(12)(a) (2006). The term "principal real estate broker" includes finders. *See generally Diversified Gen. Corp. v. White Barn Golf Course,* 584 P.2d 848, 849–51 (Utah 1978) (holding that a person who finds a purchaser for a property "fall[s] precisely within the statutory definition of a real estate broker").

¶ 12 It is clear from the plain language of the statute that if UPCM qualifies as real estate under UREBA, Sachs is barred from pursuing his claim for a finder's fee. URE-BA defines real estate as "includ[ing] leaseholds and business opportunities involving real property." Utah Code Ann. § 61–2–2(14).

### A. *Business Opportunities May Include Existing Businesses*

¶ 13 Sachs argues that construing business opportunities to include an existing business would render the term "opportunities" meaningless. We disagree. UREBA defines real estate as "includ[ing] business opportunities involving real property." *Id.* § 61–2–2(14). A plain meaning analysis shows that "opportunity" expands on the word "business." For example, the term "job opportunity" would include existing jobs, as well as opportunities to develop a job. Although we need go no further in our analysis of business opportunities, the history of UREBA provides support for this finding.

¶ 14 Prior to 1985, UREBA contained the following specific definition of business opportunity: " 'Business opportunity' means an existing business, a business and its good will, a business franchise, or any combination of them." *See* Utah Code Ann. § 61–2–2 (Supp.1983). In 1985, the legislature made changes to UREBA, adding the term "involving real property" to the definition of "real estate," and removing the foregoing definition of "business opportunity." *Compare* Utah Code Ann. § 61–2–2 (Supp.1983) *with* Utah Code Ann. § 61–2–2 (Supp.1985). In the floor debate transcripts of the Utah House of Representatives, Representative Bradford was the only representative to comment on the 1985 changes to UREBA. He explained that the changes were being made

to "clarify and to clean up the language in the statute." H.B. 284, 46th Leg., Gen. Sess. (Utah Feb. 22, 1985) (statements of Rep. Bradford) (House audiograph discs nos. 8 & 9). In the Senate, Senator Overson made a comment similar to Representative Bradford's statement—"[t]he current statute is quite ambiguous and this cleans up that quite a bit." H.B. 284, 46th Leg., Gen. Sess. (Utah Feb. 27, 1985) (statements of Sen. Overson) (Senate recording disc no. 124).

¶ 15 Thus there is no indication in the legislative history that the legislature intended to exempt existing businesses from the definition of real estate. Instead, the legislature intended only to clean up and clarify what it found to be an ambiguous statute. *See id.* In the statute at issue, the legislature consolidated the definition of real estate with the definition of business opportunity and narrowed it only by clarifying that business opportunities are only classified as real estate when they involve real property. This statutory change shifted the focus of the definition from the status of the business to the services or products provided by the business. We therefore hold that "business opportunity" as used in UREBA *may* include existing businesses that involve real estate.

B. *The Sale of a Business Opportunity Where the Exchange of Real Property is a Dominant Feature of the Transaction is a Sale of Real Estate Under UREBA*

¶ 16 Sachs points out that UPCM's real property was titled to UPCM both before and after the merger. Therefore, Sachs argues, no real estate changed hands; the only thing transferred was stock and thus the transaction did not involv[e] real property under UREBA.

¶ 17 In our review, we conclude that the phrase "involving real property" in UREBA is ambiguous. A statute is ambiguous "when it may reasonably 'be understood to have two or more plausible meanings.'" *Utah Pub. Employees Ass'n v. State*, 2006 UT 9, ¶ 60, 131 P.3d 208 (quoting *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)). Because "involving real property" could plausibly be interpreted to be so broad as to include a single share of stock in a corporation that owns real property, or so

narrow as to only include the transfer of a business's real property assets, we agree with the court of appeals that "consider[ing] the plain language of the Act in its entirety ... it is unclear ... whether Sachs was required to comply with UREBA when finding a buyer for all of UPCM's stock." *Sachs*, 2007 UT App 169, ¶ 38, 163 P.3d 662. Because the plain language of the definition of real estate in UREBA is ambiguous, we "look to other interpretive tools," *Utah State Tax Comm'n v. Stevenson*, 2006 UT 84, ¶ 32, 150 P.3d 521 (internal quotation marks omitted), including the legislative history of UREBA and the treatment of similar statutes in other states.

¶ 18 As noted above, the legislative history of the 1985 amendments only indicates that by adding the phrase "involving real property," the legislature was clarifying the law, and thus the history provides us with no assistance on the meaning of this phrase. We disagree with Sachs's argument that the sale of only UPCM's stock and not its real property assets automatically places this transaction outside the reach of UREBA. Despite the fact that stocks or shares in a corporation are generally considered personal property, there are occasions when their transfer is entirely secondary to the transfer of real property assets. *See J.I. Kislak v. Carol Mgmt. Corp.*, 7 A.D.2d 428, 184 N.Y.S.2d 315, 318 (N.Y.App.Div.1959) ("A sale of all of the stock of a corporation has been held to be a sale of its assets.") (internal quotation marks omitted). A number of jurisdictions analyze such transactions in terms of their substance rather than their form. *See, e.g., Cooney v. Ritter*, 939 F.2d 81, 86–89 (3d Cir.1991) (holding that the New Jersey real estate licensing act is applicable to the sale of a company through a stock sale); *Shochet Sec., Inc. v. First Union Corp.*, 663 F.Supp. 1035, 1037 (S.D.Fla.1987) (finding that the sale of the entire business of a company through a stock sale is within Florida's real estate licensing laws); *All Points Traders, Inc. v. Barrington Assocs.*, 211 Cal.App.3d 723, 259 Cal.Rptr. 780, 786–87 (1989) (finding that a real estate license is required when the sale of the company is entirely through a stock sale); *J.I. Kislak*, 184 N.Y.S.2d at 318 ("Looking at substance, rather than mere form, of the

---

Full text:

[stock] transaction herein there can be no question that the parties contemplated a sale of an interest in real estate."); *Schmitt v. Coad*, 24 Wash.App. 661, 604 P.2d 507, 510 (1979) (concluding that Washington's real estate act applied to the sale of a corporation).

¶ 19 Among the approaches of our sister states, we find the discussion in *Weingast v. Rialto Pastry Shop, Inc.*, 243 N.Y. 113, 152 N.E. 693 (1926) particularly helpful in our interpretation of UREBA. In *Weingast*, the plaintiff acted as a finder for a buyer of a restaurant business. *Id.* at 694. "The sale included the store, the lease, the good will, tables and everything that went with the place." *Id.* In 1926, New York defined a real estate broker as someone who "lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or *interest in real estate.*" *Id.* (emphasis added). The court found that the term "interest in real estate" was not "broad enough to cover, [n]or was [it] intended to cover, every transaction in which an interest in real estate may be part of the subject of transfer." *Id.* The court thus held that a finder of purchasers for a business where real estate is merely incidental to that business, such as where the business procures a lease, is not a real estate broker and therefore is not required to be licensed as one.[6] *Id.*

¶ 20 Similarly in *Dodge v. Richmond*, 5 A.D.2d 593, 173 N.Y.S.2d 786 (N.Y.App.Div. 1958), the court, in holding that transferring real property was not the dominant feature of the sale of a steel corporation, stated that "[i]f an item of real estate, or an interest in real estate, is a mere incident or incidental feature of the transaction ... the statute should not apply ... even though such item may be a significant though not a dominant feature of the transaction." *Id.* at 788.

¶ 21 In contrast, the court in *Sorice v. Du Bois* found that the dominant feature of a sale of a hotel was real property, reasoning that "[i]t is quite apparent that the business of operating a hotel is one that exploits the real estate and the sale involved is really the sale of real estate." 25 A.D.2d 521, 267

N.Y.S.2d 227, 229 (N.Y.App.Div.1966). In *J.I. Kislak*, the court again focused on the nature rather than the form of a transaction in which all of a corporation's stock was sold. 184 N.Y.S.2d at 318. Noting that the *only* asset held by the corporation was real property, the court held that it was evident that by selling the corporate stock, the "parties contemplated a sale of an interest in real estate." *Id.*

■ ¶ 22 After review, we hold that the phrase "involving real property" found in UREBA includes exchanges where the transfer of real property is the main or dominant feature of the transaction and is not merely incidental to it. In this case, focusing on the substance of the sale and not its form, the real property held by UPCM was not just a significant item involved in the transaction, but instead the dominant feature. Like the corporation in *Sorice*, the operation of UPCM exploits its real estate holdings. Furthermore just as in *J.I. Kislak*, the district court in its Minute Entry Decision found that "it is ... undisputed that defendant [UPCM]'s principal business was the leasing, development and sale of real property, and that [UPCM]'s only asset of significance was its real property." We therefore conclude that the transfer of UPCM's real property was the dominant characteristic of the sale and was not merely incidental to a transfer of stock. The transfer was a sale of real estate covered by UREBA, and Sachs is barred from recovering a finder's fee under the statute.

## II. STATUTE OF FRAUDS

¶ 23 In light of our holding that UREBA precludes Sachs's claim for a finder's fee, we need not reach the statute of frauds issue.

## CONCLUSION

¶ 24 A transaction in which the transfer of real estate is the dominant feature of the exchange, and not merely incidental to the sale of a business, is a sale of real estate

---

6. The holding in *Weingast* is now reflected in New York's real estate statute, which states that an " 'interest in real estate' shall include the sale of a business wherein the value of the real estate transferred as part of the business is not merely incidental to the transaction...." N.Y. Real Property Law § 440 (McKinney 2006 & Supp. 2008).

governed by the provisions of UREBA. In this case, the transfer of real property was the dominant feature of this transaction. We therefore reverse the decision of the court of appeals, and affirm the summary judgment entered by the district court.

¶ 25 Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Chief Justice DURHAM'S opinion.

¶ 26 Justice NEHRING does not participate herein.