2009 UT 69

**Timothy and Tami HUTTER,
Plaintiffs and Appellees,**

v.

**DIG–IT, INC., Defendant and Appellant.**

No. 20080077.

Supreme Court of Utah.

Oct. 27, 2009.

Jeffrey D. Stevens, Salt Lake City, for plaintiffs.

Dana T. Farmer, Ogden, for defendant.

## INTRODUCTION

DURRANT, Associate Chief Justice:

¶ 1 This case arises out of a dispute over the enforceability of a mechanic's lien recorded by Dig–It, Inc., against property owned by Tim and Tamara Hutter. It calls for us to consider (1) the requirements for filing a notice of commencement under the 2006 version of section 38–1–31 of the Utah Code and (2) whether an unenforceable mechanic's lien is a wrongful lien subject to nullification under Utah's Wrongful Lien Injunction Act.[1]

¶ 2 We affirm the district court's determination that, because Dig–It failed to file a preliminary notice, Dig–It's mechanic's lien is unenforceable, but we reverse the court's nullification, under the Wrongful Lien Injunction Act, of Dig–It's mechanic's lien.

## BACKGROUND

¶ 3 The Hutters are California residents who contracted with Jeromy's Homes to build a home in Weber County. On May 22, 2006, the Weber County Building Department ("Weber County") issued a building permit to Jeromy's Homes for construction of the Hutters' residence.

¶ 4 On May 26, 2006, Weber County, pursuant to the requirements of Utah's mechanic's lien statute,[2] faxed a copy of the building permit to Utah Interactive, the designated agent[3] for Utah's State Construction Regis-

1. Utah Code Ann. §§ 38–9a–101 to –205 (2005).

2. Utah Code Ann. § 38–1–31(1) (Supp.2006) ("For a construction project where a building permit is issued within 15 days after the issuance of the building permit, the local government entity issuing that building permit shall input the building permit application and transmit the building permit information to the database elec-
tronically by way of the Internet or computer modem or by any other means....").

3. Section 38–1–27(1)(e)(i) defines "designated agent" as "the third party the Division of Occupational and Professional Licensing contracts with to create and maintain the State Construction Registry."

try. Four days later, on May 30, 2006, Utah Interactive entered the information from the building permit into the Construction Registry. Utah Interactive designated the filing as a notice of commencement and included all the information entered on the Hutters' building permit in its filing. But neither the building permit itself, nor Utah Interactive's corresponding entry into the Construction Registry, contained the Hutters' full California address. Despite the fact that there were blank spaces on the building permit for both the "Mailing Address" and the "City—Zip" of the property owner, only the Hutters' California street address was entered on the building permit. The "City—Zip" blank was left empty.

¶ 5 Early in the construction process, Jeromy's Homes contracted with Dig–It to do excavating work on the Hutters' home. Dig–It commenced its work on June 5, 2006, and completed its work on October 20, 2006. Dig–It did not file a preliminary notice of its work on the project. Dig–It alleges that Jeromy's Homes did not fully pay it for the work performed.

¶ 6 On June 6, 2007, Dig–It recorded a mechanic's lien against the Hutters' home, based on its claim that it had not been fully paid for its work. After Dig–It declined the Hutters' request to voluntarily release its lien, the Hutters filed a Petition for Civil Wrongful Lien Injunction, seeking to nullify Dig–It's lien under the Wrongful Lien Injunction Act. The district court granted the Hutters' petition, concluding that, because the Hutters had filed an enforceable notice of commencement, Dig–It's lien was unenforceable due to its failure to file a preliminary notice. The district court also determined that Dig–It's lien was a "wrongful lien" within the meaning of the Wrongful Lien Injunction Act and granted the Hutters' petition for

nullification. Dig–It timely appealed the district court's ruling. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

**STANDARD OF REVIEW**

¶ 7 Whether a particular notice of commencement is enforceable is a mixed question of law and fact. Since the facts in this case that are determinative of whether the Hutters' notice of commencement is enforceable are not complex and do not depend significantly on the credibility of witnesses, we accord only a limited degree of deference to the district court's findings.[4]

¶ 8 The question of what constitutes a wrongful lien for purposes of the Wrongful Lien Injunction Act is a legal question of statutory interpretation. Thus, we review the district court's determinations for correctness.[5]

**ANALYSIS**

¶ 9 In 2004, the Utah Legislature passed House Bill 136, which revised the requirements and procedures for recording, perfecting, and enforcing mechanic's liens and created an online database—the Construction Registry—to manage mechanic's liens filings. According to the statutory scheme, the filing of a notice of commencement obligates subcontractors to file a preliminary notice in order to maintain their right to record a mechanic's lien.[6] If an enforceable notice of commencement is not filed, however, subcontractors are under no obligation to file a preliminary notice.[7]

¶ 10 In this case, the Hutters contend that the transmission of the building permit information by Weber County and the entry of the information into the Construction Registry by Utah Interactive constituted an en-

---

4. *State v. Levin*, 2006 UT 50, ¶ 26, 144 P.3d 1096.

5. *Esquivel v. Labor Comm'n*, 2000 UT 47, ¶ 14, 982 P.2d 87.

6. Utah Code Ann. § 38–1–32 (Supp.2006) ("Except for a person who has a contract with an owner or an owner-builder, a subcontractor shall file a preliminary notice with the database within . . . 20 days after the filing of a notice of commencement. . . . If a person who is required to

file a preliminary notice under this chapter fails to file the preliminary notice, that person may not hold a valid lien under this chapter.").

7. *Id.* § 38–1–31(3) ("If a notice of commencement for a construction project is not filed within the time set forth in Subsections 38–1–31(1)(a) and (b), the following do not apply: (a) Section 38–1–32; and (b) Section 38–1–33.").

forceable notice of commencement and that Dig–It has no right to maintain a mechanic's lien on the Hutters' home because Dig–It did not file a preliminary notice. The Hutters also assert that, because Dig–It's mechanic's lien is unenforceable, it qualifies as a "wrongful lien" and was properly nullified under the Wrongful Lien Injunction Act.

¶ 11 Dig–It, in contrast, argues that neither the transmission of the building permit by Weber County nor the entry of the permit information into the Construction Registry by Utah Interactive constituted a notice of commencement because the statute requires that notices of commencement be filed by property owners. Dig–It further argues that even if the notice of commencement for the Hutters' home is deemed to have been filed by an appropriate party, it is unenforceable because it did not contain the statutorily required content, the information in the notice was not verified prior to the filing deadline, and it was not timely filed since no payment receipt was obtained. In the alternative, Dig–It argues that, even if its mechanic's lien is unenforceable, it is not a "wrongful lien" for purposes of the Wrongful Lien Injunction Act because that act applies only to common law liens.

¶ 12 We begin by evaluating Dig–It's arguments relating to the notice of commencement and then turn to the wrongful lien question.

## I. IN CASES WHERE A BUILDING PERMIT IS ISSUED FOR A CONSTRUCTION PROJECT, THE ENTRY OF THE BUILDING PERMIT INFORMATION INTO THE CONSTRUCTION REGISTRY CONSTITUTES A NOTICE OF COMMENCEMENT

¶ 13 Section 38–1–31 of the Utah Code [8] outlines the requirements for notices of commencement and the procedures for filing them. In the event that a building permit is issued for a construction project, the issuing municipality is required to "input the building permit application and transmit the building permit information" to the Construction Registry within 15 days of the building permit being issued.[9] The statute provides that "such information shall form the basis of a notice of commencement."[10] In cases where a building permit is not issued for a construction project, the statute provides that an "original contractor or owner-builder may file a notice of commencement with the database" no later than 15 days after physical construction has commenced at the building site.[11]

¶ 14 Dig–It contends that the statutory language should be read to require that notices of commencement be filed by owner-builders or original contractors, regardless of whether a building permit was issued for the project. In response, the Hutters argue that, although the burden to file notices of commencement rests on owners and original contractors for projects in which a building permit has not been issued, when a building permit has been issued the transmission of the building permit information to the Construction Registry by the issuing municipality constitutes the filing of a notice of commencement.

¶ 15 We begin our analysis by addressing Dig–It's argument regarding the relevancy of the 2007 amendments to section 38–1–31. In its opening brief, Dig–It cites to a version of section 38–1–31 that was enacted by the legislature in 2007, after the relevant events in this case had taken place. Although Dig–It acknowledges that it is the 2006, rather than the 2007, version of section 38–1–31 that governs this appeal, Dig–It argues that we should view the 2007 amendment of section 38–1–31 as a clarification of the meaning of the 2006 version.

---

8. The relevant events in this case took place in 2006 and are therefore governed by the version of the mechanic's lien statute then in effect. Since the statute has been substantively amended a number of times since 2006, we cite to the version in effect in 2006 unless otherwise noted.

9. Utah Code Ann. § 38–1–31(1)(a)(i) (Supp. 2006).

10. *Id.*

11. *Id.* § 38–1–31(1)(b).

■ ¶ 16 We decline to do so. The only evidence that Dig–It points to in support of its contention that the 2007 amendments were clarifications rather than substantive changes is the following statement by Representative Morely:

> This bill is a consensus industry bill that we've been working on, we've done that ... the last year or two in bringing forth just *clarifications or changes* that have been brought out during the course of the year, particularly concerning the [Construction Registry]. This clarifies time limits on liens, does not change those limits, just takes it out of one section and makes reference to it in another, so it clarifies it. It addresses issues regarding the enforcement of liens and timing—*just clarifies timing on the filing of commencement notices and preliminary notices.* It also exempts wage laborers from filing a preliminary notice and makes some revisions or clarifications to the Residential Lien Recovery Fund.[12]

While it is true that an amendment to an ambiguous statute "may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law," [13] this is not the general rule, and this view of an amendment should be taken only where there is a strong indication that clarification was, in fact, the legislative intent.[14] Representative Morely's general statement that the 2007 amendments were intended to clarify "timing on the filing of notices of commencement" is too slender a reed upon which to rest a general conclusion that the 2006 version of the statute should be construed in accordance with a subsequently enacted version. This is especially true where Dig–It wants us to read the 2007 amendments as an authoritative statement of the meaning of the 2006 statute regarding *what* constitutes a notice of commencement, even though Representative Morely's statement indicates only that the 2007 amendment clarified issues regarding the *timing* of notice of commencement filings.

¶ 17 We therefore decline to consider the 2007 version of section 38–1–31 as evidence of the substantive meaning of the 2006 version. Instead, we base our analysis solely on the text of the 2006 version of the statute.[15]

■ ¶ 18 As it was in effect in 2006, section 38–1–31(1) reads as follows:

> (1)(a)(i) For a construction project where a building permit is issued, within 15 days after the issuance of the building permit, the local government entity issuing that building permit shall input the building permit information to the database electronically by way of the Internet or computer modem or by any other means and such information shall form the basis of a notice of commencement.
>
> ...
>
> (b) For a construction project where a building permit is not issued, within 15 days after commencement of physical construction work at the project site, the original contractor shall file a notice of commencement with the database.
>
> (c) An owner of construction, a lender, surety, or other interested person may file

---

12. House Floor Debate, H.B. 277S03, 57th Leg., Gen. Sess. (February 8, 2007) (Statement of Rep. Morely) (emphasis added).

13. *State v. Bryant,* 965 P.2d 539, 546 (Utah Ct. App.1998) (internal quotation marks omitted).

14. *See, e.g., D.B. v. State,* 925 P.2d 178, 182 n. 5 (Utah Ct.App.1996) (determining, because of statements found in the legislative history and the overall structure of the statutory scheme, that the legislature passed an amendment with the intent to clarify the law).

15. We do note, however, that the legislature again amended section 38–1–31 in 2009 in a way that appears to be consistent with our reading of the 2006 version of the statute. *See* Utah Code Ann. § 38–1–31(1)(a)(i)(A) (Supp.2009) ("For a construction project where a building permit is issued to an original contractor or owner-builder, no later than 15 days after the issuance of the building permit: (I) the local government entity issuing that building permit shall input the building permit application and transmit the building permit information to the database electronically by way of the Internet or computer modem or by any other means; *or* (II) the original contractor, owner, or owner-builder may file a notice of commencement with the database *whether or not a building permit is issued or a notice of commencement is filed under Subsection (1)(a)(i)(A)(I)."* (emphasis added)). However, our holding in this case is not based in any way on that amendment.

a notice of commencement with the designated agent within the time prescribed by Subsections (1)(a) and (b).[16]

¶ 19 Focusing on the "form[s] the basis"[17] language from the statute, Dig–It contends that the transmission of the building permit information by Weber County and its subsequent entry into the Construction Registry by Utah Interactive does not constitute a notice of commencement. According to Dig–It, it would be inconsistent with the statutory language to hold that the transmission of the building permit information was itself a notice of commencement when section 38–1–31 states that the transmission of the information only "form[s] the basis of a notice of commencement." Based on this reasoning, Dig–It concludes that, even though the building permit information may have been transmitted to the Construction Registry by the issuing municipality or Utah Interactive, a separate notice of commencement filing must be made by the owner, original contractor, or authorized agent.

¶ 20 Since there is no dispute that Utah Interactive made a Construction Registry filing that it designated as a notice of commencement for the Hutters' home prior to the 15–day deadline, Dig–It's argument boils down to a contention that this filing is not a notice of commencement simply because it was not made by the Hutters or their general contractor. But the separate filing urged by Dig–It is clearly not required by the statutory text. All that the statute requires is that (1) a notice of commencement filing be timely made and (2) the filing be based on the building permit information.[18] It is immaterial whether the notice of commencement filing is made by the property owner, the original contractor, the municipality issuing the building permit, or Utah Interactive. No matter which party ultimately makes the filing, it is still based on the building permit information and therefore qualifies as a notice of commencement according to the statute.

¶ 21 In this case, Weber County faxed a copy of the building permit to Utah Interac-tive, which subsequently entered the building permit information into the Construction Registry and designated it as a notice of commencement. We therefore hold that Utah Interactive's Construction Registry entry qualified as a notice of commencement under section 38–1–31(1)(a). We now address Dig–It's arguments regarding whether this notice of commencement is enforceable.

## II. THE NOTICE OF COMMENCEMENT FILED FOR THE HUTTERS' PROPERTY IS ENFORCEABLE BECAUSE IT SATISFIES ALL PROCEDURAL REQUIREMENTS AND CONTAINS ALL THE CONTENT REQUIRED BY STATUTE

¶ 22 Dig–It also argues that, even if the Construction Registry filing by Utah Interactive was filed by the appropriate party, and therefore qualifies as a notice of commencement, it is unenforceable because it fails to meet both the procedural and substantive statutory requirements for notices of commencement. Specifically, Dig–It contends that the notice is unenforceable because it does not include all of the statutorily required content and that, prior to the expiration of the 15–day deadline, the Hutters neither verified it nor obtained a payment receipt for the filing.

¶ 23 The district court found that the notice of commencement filed for the Hutters' home was enforceable in all respects, and we agree. As explained below, we determine that the Hutters' notice of commencement satisfies the statutory content requirements for notices of commencement because it falls within the building permit exception found in section 38–1–31(2)(b). We also conclude that, in order for a notice of commencement to be enforceable, there is neither a separate procedural requirement that the filing be verified nor a requirement that a payment receipt for the filing be received within the 15–day deadline.

16. Utah Code Ann. § 38–1–31(1) (Supp.2006).

17. *Id.* § 38–1–31(1)(a)(i).

18. *Id.*

*A. When a Building Permit Is Issued for a Construction Project, the Notice of Commencement Filing Is Required to Contain Only the Information Actually Entered on the Building Permit*

¶ 24 Dig–It first contends that the notice of commencement filed for the Hutters' home is unenforceable because it does not contain the content required by statute. The district court found that the notice of commencement contained the statutorily required content because it fit within the building permit exception in section 38–1–31(2)(b). We agree with the district court's finding.

¶ 25 Section 38–1–31(2)(a) sets out the content requirements for notices of commencement:

(2)(a) The content of a notice of commencement shall include the following:

(i) the name and address of the owner of the project;

(ii) the name and address of the:

(A) original contractor; and

(B) surety providing any payment bond for the project or if none exists, a statement that a payment bond was not required for the work being performed;

(iii)(A) the project address if the project can be reasonably identified by an address; or

(B) the name and general description of the location of the project if the project cannot be reasonably identified by an address;

(iv) a general description of the project; and

(v) the lot or parcel number, and any subdivision, development, or other project name, of the real property upon which the project is to be constructed if the project is subject to mechanic's liens.[19]

¶ 26 In cases where a building permit is issued for a construction project, the statute contains a qualified exemption from the section 38–1–31(2)(a) content requirements:

(b) The content of a notice of commencement need not include all of the items listed in Subsection (2)(a) if:

(i) a building permit is issued for the project; and

(ii) all items listed in Subsection (2)(a) that are available on the building permit are included in the notice of commencement.[20]

¶ 27 Dig–It contends that the notice of commencement filing made by Utah Interactive does not satisfy the content requirements because it does not include the Hutters' full address, in that the city and state are omitted from both the building permit and the filing made by Utah Interactive. The Hutters dispute that the notice of commencement is unenforceable, arguing both that it satisfies the full section 38–1–31(2)(a) content requirements and that the notice qualifies for the building permit exception to the content requirements. We do not address the parties' arguments regarding the full content requirements for notices of commencement because we conclude that the notice of commencement filed for the Hutters' property fits within the building permit exception.

¶ 28 Section 38–1–31(2)(a) requires that a notice of commencement filing include certain information. This requirement ensures that the notice contains sufficient information to enable subcontractors to locate the notice in the Construction Registry and correctly attach their preliminary notices. If there were no standard content requirements for notices of commencement, there would be no guarantee that each notice would contain the information required for subcontractors to (1) tell if a notice of commencement filing had been made for a particular project, thereby activating the subcontractor's obligation to file a preliminary notice, or (2) attach their preliminary notice to the correct Construction Registry filing.

¶ 29 But the need for these standard content requirements is significantly reduced when a building permit has been issued for a particular construction project. Each issued building permit contains the building permit number, which can be used to search the Construction Registry for a notice of com-

---

19. Utah Code Ann. § 38–1–31(2)(a) (Supp.2006).

20. *Id.* § 38–1–31(2)(b).

mencement filed for the construction project. Accordingly, on projects for which a building permit was issued, the statute relaxes the full content requirements and requires only that the notice of commencement contain whatever section 38–1–31(2)(a) information is available on the building permit. If none of the information required by section 38–1–31(2)(a) is available on the building permit, none of that information need be included in the notice of commencement filing for that construction project. Conversely, if all of the section 38–1–31(2)(a) information is available on the building permit, all of it must be included in the notice of commencement filing in order for the filing to qualify for the building permit exception.

¶ 30 Because a building permit was issued for construction of the Hutters' home, the parties agree that the notice of commencement filing need include only the information required in section 38–1–31(2)(a) that is "available" on the building permit. But they dispute the meaning of the word "available." Dig–It argues that information is available on the building permit if it is *requested* on the building permit. According to Dig–It, if the building permit has a place for the entry of any information required by section 38–1–31(2)(a), that information must be included in the notice of commencement filing, regardless of whether it was ever actually entered on the building permit. Therefore, Dig–It contends that, because the building permit application for the Hutters' home had spaces for the applicant to enter the city and zip code of the property owner, and because this information was not included in the notice of commencement filing made by Utah Interactive, the notice of commencement filing does not qualify for the building permit exception to the content requirements.

¶ 31 The Hutters read the statute differently. They contend that information is only available on the building permit when it has actually been *entered* on the building permit. Therefore, the Hutters argue that, so long as all the information required by section 38–1–31(2)(a) that was actually entered on the building permit is also included in the Con-

struction Registry notice of commencement filing, the filing qualifies for the building permit exception to the content requirements. In this case, since all of the section 38–1–31(2)(a) information that was written on the building permit was also included in the Construction Registry filing made by Utah Interactive, the Hutters contend that the notice of commencement falls within the building permit exception.

¶ 32 We agree with the Hutters' position. When interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning.[21] The ordinary meaning of the word "available" is "capable of use for the accomplishment of a purpose" or "immediately utilizable."[22] Based on this meaning, information is "available on the building permit" when it is present or ready for immediate use. Information that has actually been entered on the building permit is available in this sense; it is present and ready to be put to use. Information that is requested, but not entered, on the building permit is not available in this same sense. Information that is only requested, but not entered, on the building permit is neither physically present nor ready for immediate use. Thus, the ordinary meaning of the word "available" supports the Hutters' interpretation.

¶ 33 Dig–It argues that adopting the Hutters' position could lead to the absurd result of notices of commencement being enforced despite having none of the information required by section 38–1–31(2)(a). Dig–It points out that a completely empty building permit would satisfy the building permit exception under the Hutters' rule. It is true that reading the word "available" as the Hutters suggest would allow a notice of commencement filing with no section 38–1–31(2)(a) information to qualify for the building permit exception so long as none of the information required by section 38–1–31(2)(a) was entered on the building permit itself. But it is unlikely that a municipality would issue a building permit containing *none* of

**21.** *Versluis v. Guar. Nat'l Cos.*, 842 P.2d 865, 867 (Utah 1992).

**22.** Webster's Third New Int'l Dictionary 150 (1986).

the information required by section 38–1–31(2)(a). More importantly, however, a notice of commencement filing based on a building permit with none of the required information would still allow subcontractors to search the Construction Registry using the building permit number, thereby allowing them to locate any notice of commencement filing based on that building permit and attach their preliminary notices.

■ ¶ 34 Accordingly, we hold that a notice of commencement qualifies for the building permit exception to the 38–1–31(2)(a) content requirements so long as all the information required by section 38–1–31(2)(a) that was actually entered on the building permit is also included in the Construction Registry notice of commencement filing. Because all of the required information actually entered on the building permit was also included in the notice of commencement filing made by Utah Interactive, the notice of commencement filed for the Hutters' home satisfies the content requirements under the building permit exception.[23]

*B. Post–Filing Verification of the Accuracy of the Information in a Notice of Commencement Is Not a Prerequisite to Enforcement*

■ ¶ 35 Dig–It also argues that the notice of commencement filing by Utah Interactive is unenforceable for the additional reason that the Hutters failed to verify the information contained in the filing prior to the filing deadline. Although Dig–It argued this issue before the district court, neither the court's memorandum decision nor its final order addressed it. Nevertheless, since the district court found the notice of commencement valid and enforceable, it implicitly ruled against Dig–It on this issue. We

likewise conclude that Dig–It's position is without merit.

¶ 36 Dig–It's argument is based on section 38–1–31(5)(a), which states as follows:

The burden is upon any person seeking to enforce a notice of commencement to verify the accuracy of information in the notice of commencement and prove that the notice of commencement is filed timely and meets all of the requirements in this section.

¶ 37 According to Dig–It, the party seeking to enforce a notice of commencement must verify the correctness of the information prior to the filing deadline so that subcontractors will be able to locate the notice of commencement and attach their preliminary notices. Dig–It argues that the "burden to verify articulated by the Utah Legislature ... is meaningless unless: (1) verification occurs within the deadline for filing a notice of commencement; and (2) a notice of commencement is unenforceable if the party seeking enforcement fails to prove that it verified the accuracy of the information."

¶ 38 Contrary to Dig–It's assertion, the burden to verify is not meaningless unless it is interpreted to impose a separate procedural duty of verification. Even if the statute is not interpreted to impose a procedural requirement that the owner log back into the Construction Registry to check the accuracy of each notice of commencement filing before the deadline passes, the statute nonetheless allocates the consequences in the event that the information found in the notice of commencement is substantially inaccurate. Thus, in the event that a notice of commencement filed by a municipality issuing a building permit is inaccurate, section 38–1–31(5) makes clear that it is the person seeking to

---

23. While our holding does allow for the possibility that a clerical failure to transfer information from the building permit to the Construction Registry might result in a notice of commencement being unenforceable, this is a risk that the statute allocates to the party seeking to enforce the notice of commencement. The owner or original contractor is always free to check to ensure that the notice of commencement filing made by the municipality or Utah Interactive accurately reflects the building permit. If an owner declines to ensure the accuracy or completeness of information entered into the Construction Registry by a third party, it bears the risk of not being able to enforce the notice of commencement if the information ultimately proves inaccurate or incomplete. Utah Code Ann. § 38–1–31(5)(a) (Supp.2006) ("The burden is upon any person seeking to enforce a notice of commencement to verify the accuracy of information in the notice of commencement and prove that the notice of commencement is filed timely and meets all of the requirements in this section.").

enforce the notice, rather than the person that created the notice, that bears the consequences of the inaccuracies.[24]

¶ 39 Accordingly, we hold that the notice of commencement filed for the Hutters' home is not invalid simply because the Hutters did not verify the accuracy of the notice within the 15–day filing period.

*C. The Timeliness of a Notice of Commencement for a Project for Which a Building Permit Is Issued Is Not Determined by the Date a Payment Receipt Is Received*

¶ 40 As its final argument for why the Hutters' notice of commencement is unenforceable, Dig–It asserts that since no payment receipt was issued for Utah Interactive's May 30, 2006 filing, the Hutters are unable to prove that the notice of commencement was timely filed. On this issue, the district court found that a payment receipt was not required because the notice of commencement for the Hutters' home was an alternate method filing, which does not use a payment receipt to determine the filing date. Again, we agree with the district court's analysis.

¶ 41 Dig–It's argument is based on rule 156–38b–506, which was promulgated by the Division of Occupational and Professional Licensing pursuant to section 38–1–27(2)(e)(ii):

> The official date of a particular filing shall be determined as follows:
>
> (1) In the case of an electronic filing, it shall be the date the Construction Registry accepts a filing input by the person making the filing and makes available a payment receipt to the person making the filing.
>
> (2) In the case of an alternate method filing, it shall be the date upon which the designated agent received a filing that was ultimately accepted into the Construction Registry including content requirements and payment.[25]

¶ 42 Dig–It's argument fails because the notice of commencement filing for the Hutters' home qualifies as an "alternate method filing," and the rule specifies that an alternate method filing is deemed filed on "the date upon which the designated agent received a filing that was ultimately accepted into the Construction Registry." Section 38–1–27(2)(e)(ii) provides that "telefax" is an alternate filing method.[26] Since Weber County faxed a copy of the building permit to Utah Interactive, the date the notice of commencement was filed is the date the building permit was received by Utah Interactive. In this case, the building permit was issued for the Hutters' home on May 22, 2006, and Utah Interactive received the building permit from Weber County on May 26, well within the 15–day time period in which a notice of commencement could have been filed for the Hutters' home. Accordingly, we hold that the notice of commencement for the Hutters' home was timely filed.

¶ 43 Having determined that the Construction Registry filing made by Utah Interactive constituted a notice of commencement that was enforceable in all respects, we affirm the district court's finding that Dig–It's failure to file a preliminary notice rendered its mechanic's lien unenforceable. We now evaluate whether the district court correctly nullified Dig–It's lien under the Wrongful Lien Injunction Act.

**III. EVEN THOUGH DIG–IT'S MECHANIC'S LIEN IS UNENFORCEABLE, THE LIEN DOES NOT QUALIFY AS A WRONGFUL LIEN FOR PURPOSES OF THE WRONGFUL LIEN INJUNCTION ACT**

¶ 44 The district court nullified Dig–It's lien under the Wrongful Lien Injunction Act based on its determination that Dig–It's lien was "wrongful" because it was unenforceable. Dig–It contends that, even if its mechanic's lien is unenforceable, it is not "wrongful" because the definition of a wrong-

---

24. *Id.* § 38–1–31(5)(a) ("The burden is upon any person seeking to enforce a notice of commencement to verify the accuracy of information in the notice of commencement and prove that the notice of commencement is filed timely and meets all of the requirements in this section.").

25. Utah Admin. Code r. 156–38b–506 (2006).

26. Utah Code Ann. § 38–1–27(2)(e)(ii) (Supp. 2006).

ful lien applicable to the Wrongful Lien Injunction Act excludes all liens that are created by statute. Dig–It argues that because there is statutory authorization for mechanic's liens, Dig–It's lien is not, by definition, wrongful and therefore is not subject to nullification under the Wrongful Lien Injunction Act.

¶ 45 Given our conclusion that the district court properly held, based on Dig–It's failure to file a preliminary notice, that its lien is unenforceable, we need not reach the question of whether the district court properly nullified Dig–It's lien under the Wrongful Lien Injunction Act. Nevertheless, because of the importance of the issue, we take this opportunity to clarify the reach of the Wrongful Lien Injunction Act.

■■ ¶ 46 The Wrongful Lien Injunction Act creates an expedited procedure for removing wrongful liens.[27] The Wrongful Lien Injunction Act borrows its definition of a wrongful lien [28] from the "definitions" section of the Wrongful Lien Act, which reads as follows:

(6) "Wrongful lien" means any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:

(a) expressly authorized by this chapter or another state or federal statute;

(b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

(c) signed by or authorized pursuant to a document signed by the owner of the real property.[29]

Both parties agree that a lien is wrongful if it is not "expressly authorized by . . . statute."

They dispute, however, the meaning of the phrase "expressly authorized." Dig–It contends that because the right to file a mechanic's lien is granted by statute, all mechanic's liens—even if they ultimately prove unenforceable—are expressly authorized by statute and therefore are not wrongful liens. The Hutters counter by arguing that an unenforceable lien cannot be expressly authorized by statute since the statute only allows liens to be recorded that comply with the statutory terms.

¶ 47 The Hutters also note that the Wrongful Lien Act contains a provision that specifically exempts mechanic's liens from its operation.[30] Based on the existence of this exemption, the Hutters reason that the legislature intended the definition of "wrongful lien" to include statutorily created liens that ultimately prove unenforceable. The Hutters argue that there would be no reason to exclude mechanic's liens from the operation of the Wrongful Lien Act if the definition of wrongful lien did not encompass them in the first place. And because the Wrongful Lien Injunction Act only incorporates the *definition* of "wrongful lien" from the Wrongful Lien Act and not the provision exempting mechanic's liens, the Hutters contend that unenforceable mechanic's liens are wrongful liens for purposes of the Wrongful Lien Injunction Act.

¶ 48 Dig–It responds by asserting that the exemption of mechanic's liens found in the Wrongful Lien Act exists only to clarify that the definition of "wrongful lien" was never intended to encompass liens that were authorized by statute, but rather was intended to encompass only common law liens.

■■ ¶ 49 This issue is one of first impression for this court, although the court of

27. *See* Utah Code Ann. §§ 38–9a–201 to –205 (2005).

28. The Wrongful Lien Injunction Act also defines a "wrongful lien" as a lien made in violation of section 76–6–503.5. *Id.* § 38–9a–102. Section 76–6–503.5 makes it a crime to file a lien while "having no objectively reasonable basis to believe [the filer] has a present and lawful property interest in the property or a claim on the assets." *Id.* § 76–6–503.5. But in this case Dig–It clearly has a reasonable basis to believe it has a claim against the Hutters' home and the Hutters do not

argue otherwise. The parties' dispute is not over whether Dig–It had a right to a mechanic's lien on the Hutters' home, but over whether Dig–It has adequately complied with the statutory requirements to maintain its lien.

29. Utah Code Ann. § 38–9–1(6) (2005).

30. *Id.* § 38–9–2(3) ("This chapter does not apply to a person entitled to a lien under Section 38–1–3 who files a lien pursuant to Title 38, Chapter 1, Mechanic's Liens.").

appeals has addressed it in dicta.[31] Both parties' interpretations are plausible readings of the statutory text. And it is not clear from the statute's structure and other provisions that one interpretation better reflects the legislature's intent than the other. When the plain text of a statute is ambiguous, in that its terms are susceptible to more than one reasonable interpretation, we may look to legislative history as an aid to ascertain the intent of the legislature.[32] We conclude that the phrase "expressly authorized by . . . statute" is ambiguous and therefore turn to the statute's legislative history for guidance as to the legislature's intent.

¶ 50 The Wrongful Lien Act was originally enacted by the legislature in 1985 and was last amended in 1997. Senator Matheson, a sponsor of the original bill, stated that its purpose was to impose penalties on those filing common law liens on the property of public officials in retaliation for prosecution. After making his initial statement, Senator Matheson was questioned by Senator Carling, who was concerned that the original bill's definition of a wrongful lien was too broad for the bill's expressed purpose. Senator Carling's question precipitated the following exchange:

> **Senator Carling:** Mr. President, . . . I thought this just went to common law liens, but apparently Senator Matheson, [you're] enacting a whole new section and that whole new section it appears goes to all liens, not just common law liens and it would go to rental liens, lessors liens, . . . mechanic's liens and the thing that concerns me, I . . . agree with what you're trying to do and the problem that you have but I think that you're going further than you intended to go because somebody might think that they have a valid lien against somebody, they're going to file a lien and it might be determined to be invalid. One of the things that it says here, uh, they assert a lien and then you look at line 27, page 1 it says ["]or is

otherwise invalid,["] . . . that kind of covers the whole waterfront, I don't see a problem where it says he ["]knows or has reason to know that the document is forged, groundless, contains a material misstatement or false claim,["] but . . . where we're putting even a little bit of negligence in here I wonder why you need ["]or otherwise invalid,["] that seems to be a little too broad.

> **Senator Matheson:** Now Mr. President, I'd have no objections to taking that out. You know the purpose of the bill and that's to cover all of you . . . [who] might . . . find yourself in the same position if you resist what these people are attempting to do.

> . . .

> **Senator Moll:** . . . I believe you already know the purpose of the bill and that is to take care of . . . the problems raised by [some groups] in this state . . . where as a punitive measure if we don't do it their way they file what we call common law liens with recorders who are hard put to know whether they even file them or whether they have any liability. . . . [I]t addresses only liens on real property and I suggested some language to . . . Senator Matheson, . . . which says in effect, this act shall have no application to . . . [mechanic's] or materialmen's liens and I believe that that would clear it up and express the . . . intent of the body. . . .

> . . .

> **Senator Matheson:** Now Mr. President, I'd move under suspensions of rules [clause] it is fourteen words that we add the language which Mr. [Moll] has just said at the end of or after line 33 on page 1, "This act is not intended to be applicable to mechanic's or materialmen's liens." [33]

¶ 51 Ultimately, as a result of Senator Carling's concern, the amendment referenced in the legislative history quoted above passed

---

**31.** *See Foothill Park, LC v. Judston, Inc.,* 2008 UT App 113, ¶ 19, 182 P.3d 924 (stating, in dicta, that "the [Wrongful Lien Act] is not so broad as to exempt any filing that purports to arise under the [mechanic's] lien statute").

**32.** *Sachs v. Lesser,* 2008 UT 87, ¶ 17, 207 P.3d 1215.

**33.** Senate Floor Debate, S.B. 178, 42nd Leg., Gen. Sess. (February 21, 1985) (statements of Senators Matheson, Carling, and Moll).

and the exemption of mechanic's liens was added to the bill.

¶ 52 This legislative history makes clear that the legislature intended that the definition of "wrongful lien" should encompass only common law liens. Therefore, we conclude that the phrase "not expressly authorized by ... statute" in the Wrongful Lien Act does not include statutorily created liens that ultimately prove unenforceable. Because Dig–It filed a mechanic's lien, which is expressly authorized by statute, the lien, though unenforceable for the reasons stated above, is not wrongful under the Wrongful Lien Injunction Act.

## CONCLUSION

¶ 53 We affirm the district court's determination that Dig–It's mechanic's lien is unenforceable due to Dig–It's failure to file a preliminary notice. We reverse, however, the court's nullification of Dig–It's mechanic's lien under the Wrongful Lien Injunction Act. We remand to the district court for proceedings consistent with this opinion.

¶ 54 Justice WILKINS, Justice PARRISH, Justice NEHRING, and Judge QUINN concur in Associate Chief Justice DURRANT'S opinion.

¶ 55 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge ANTHONY B. QUINN sat.