**2020 UT App 151**

## THE UTAH COURT OF APPEALS

C. ROBERT DAHL,
Appellee,
*v.*
STEVE S. CHRISTENSEN, HIRSCHI CHRISTENSEN PLLC, AND
CHRISTENSEN THORNTON PLLC,
Appellants.

Opinion
No. 20190330-CA
Filed November 5, 2020

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 120400862

Steve S. Christensen and Clinton Brimhall, Attorneys
for Appellants

Rosemond G. Blakelock and Megan Blakelock,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGE RYAN M. HARRIS concurred. JUDGE GREGORY K. ORME
concurred, with opinion.

HAGEN, Judge:

¶1     As a means to secure payment for the fees owed to him by
his client, Kim Dahl, attorney Steve S. Christensen placed a $2
million lien against Ms. Dahl's interest in a property co-owned
by her ex-husband, C. Robert Dahl. In response, Mr. Dahl
brought a wrongful lien action against Christensen and his law
firms (collectively, Christensen). Following a bench trial, the
district court agreed with Mr. Dahl that all or most of the lien
was wrongful and entered judgment on that claim in Mr. Dahl's
favor. Christensen appeals, arguing that the court erred in its
determination that the lien was wrongful. Because we agree that

the lien does not fall within the statutory definition of a wrongful lien, we reverse the court's ruling and vacate the judgment against Christensen.

BACKGROUND

¶2     Before the initiation of the proceedings that led to this appeal, Christensen acted as counsel for Ms. Dahl in connection with a variety of legal matters, including (1) a case concerning an irrevocable trust, (2) a divorce action, (3) a legal malpractice case brought against Ms. Dahl's former attorney, and (4) appeals stemming from the foregoing actions. Ms. Dahl signed multiple retainer agreements in connection with the divorce case, as well as a retainer agreement in the malpractice case. To secure any potential unpaid attorney fees, the divorce retainers and the malpractice retainer purported to grant Christensen "an immediate lien" on a home that Ms. Dahl co-owned with Mr. Dahl (the property). Christensen thereafter recorded a $2 million notice of lien against Ms. Dahl's interest in the property.

¶3     The divorce and trust actions eventually made their way to the Utah Supreme Court and were consolidated. *See Dahl v. Dahl*, 2015 UT 79, ¶ 11, 459 P.3d 276. In the resulting opinion, the court concluded that the divorce retainers "constituted a prohibited fee arrangement." *Id.* ¶ 197. Because the divorce retainers purported to grant Christensen an interest in the property—the ownership of which was at issue in the divorce case—they ran afoul of rule 1.8(i)(1) of the Utah Rules of Professional Conduct, which prohibits attorneys from acquiring "a proprietary interest in the cause of action or the subject matter of litigation the lawyer is conducting for a client." *Id.* ¶ 191 (cleaned up). Although the rule contains an exception for liens otherwise authorized by law, the court concluded that the divorce retainers did not qualify for that exception because Utah Code section 38-2-7, the statute governing attorneys' liens, prohibits attorneys from obtaining "a lien in the representation

of a client in a domestic relations matter unless a final order of divorce has been secured," and no final divorce decree had yet been issued when Christensen recorded the lien. *Id.* ¶¶ 193–94. Accordingly, the fee arrangements laid out in the divorce retainers were invalidated. *Id.* ¶ 211.

¶4 Separately, Mr. Dahl brought the present action to nullify the lien.[1] The district court concluded both that the lien was wrongful and that Christensen had reason to know of its wrongfulness at the time that it was recorded and was consequently liable for statutory damages and attorney fees. The district court's holding that the lien was wrongful was based on two facts: (1) the supreme court's holding in *Dahl* that the divorce retainers were unlawful, and (2) "the attorney's fees claimed in the divorce action, alone, were reported to be $2,186,568," *see id.* ¶ 166, so "the vast majority—and perhaps all—of [the $2 million lien] reflects the attorney fees incurred in the divorce action." The district court explained that only "the portion of the lien that was representing the divorce case was wrongful" and that "some small portions" of the lien "may not have been wrongful" insofar as they were authorized by other documents, such as the malpractice retainer. The court also found that Christensen knew the lien was wrongful when it was recorded, making him liable for statutory damages and attorney fees.

¶5 In response to the district court's ruling, Christensen moved for additional findings of fact and an amended ruling or judgment. In that motion, Christensen argued that the lien was not wrongful because it was "authorized pursuant to a document signed by the owner of the real property." *See* Utah

---

1. Mr. Dahl also asserted a slander of title claim and that various other liens were wrongful, but those claims are not relevant to this appeal.

Code Ann. § 38-9-102(12)(c) (LexisNexis 2018).[2] Specifically, he contended that the lien was authorized, at least in part, by the malpractice retainer bearing Ms. Dahl's signature and that it therefore did not qualify as wrongful under the Wrongful Lien Act (the Act), even if some portion of the lien was unenforceable. Christensen employed the same logic to challenge the district court's finding that he knew or should have known that the lien was wrongful at the time it was recorded; that is, he argued that he could not have had reason to know the lien was wrongful because it was authorized, at least in part, by Ms. Dahl's signature on the malpractice retainer.

¶6　　In its ruling, the district court rejected these arguments. Because it was "undisputed that at least some of the attorney's fees underlying [the lien] were incurred in the divorce action," the court found it "unnecessary" to determine "[e]xactly how much of [the lien] was wrongful and how much was not." To the extent the lien was based on the divorce retainers, it was not authorized because Ms. Dahl's "assent was illegally obtained and [was] invalid." "By recording a lien that was, at least in part, wrongful," the court reasoned, Christensen "violated the [Act]." The court denied Christensen's motion and entered judgment awarding Mr. Dahl $49,568.65 in statutory damages and attorney fees.

## ISSUE AND STANDARD OF REVIEW

¶7　　Christensen appeals the district court's determination that the lien at issue violated the Act.[3] Whether a lien constitutes a

---

2. Because the pertinent language of the statute has not changed, we cite the current version for convenience.

3. In the alternative, Christensen argues that the district court clearly erred in finding that he knew the lien was wrongful

(continued…)

wrongful lien is a question of law, which we review for correctness. *Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, ¶ 6, 329 P.3d 46.

ANALYSIS

¶8 Christensen argues that the district court erred in ruling that he violated the Act, because the lien was authorized, at least in part, by the malpractice retainer agreement signed by Ms. Dahl. The Act defines a wrongful lien as:

> [A]ny document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded is not:
>
> (a) expressly authorized by this chapter or another state or federal statute;
>
> (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
>
> (c) signed by or authorized pursuant to a document signed by the owner of the real property.

---

(…continued)
when it was recorded and that he was therefore liable for statutory damages and attorney fees pursuant to Utah Code section 38-9-203(3)(a)–(b). Because we reverse the district court's determination that the lien was wrongful and vacate the judgment, we have no need to reach the second issue.

Utah Code Ann. § 38-9-102(12) (LexisNexis 2018). Under the Act, a person "who records or causes to be recorded a wrongful lien," while "knowing or having reason to know" that the lien is "a wrongful lien," "groundless," or "contains a material misstatement or false claim," is "liable to the record owner of the real property for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs." *Id.* § 38-9-203(3)(a)–(c).

¶9　For purposes of this appeal, Christensen does not take issue with the district court's ruling that the portion of the lien based on the divorce retainers was not authorized under any of the three subsections.[4] Rather, Christensen asserts that his lien on the property cannot be considered wrongful because it was authorized by the malpractice retainer Ms. Dahl signed and, thus, it satisfies Utah Code section 28-9-102(12)(c) because it was "authorized" by "a document signed by the owner of the real property." Christensen argues that "[i]f a lien arises out of fees in connection with a variety of lawsuits, some of which are valid and enforceable, the notice of [the lien] should not have resulted in a determination that the notice was a wrongful lien." Because the lien was "at least partially backed by the signature" of Ms. Dahl on the malpractice retainer, Christensen contends that the lien is outside the purview of the Act.

¶10　"[T]he Wrongful Lien Act defines 'wrongful lien' narrowly." *Anderson v. Wilshire Invs., LLC*, 2005 UT 59, ¶ 10, 123 P.3d 393. Importantly, a lien can be void or unenforceable and yet still not constitute a wrongful lien as defined by the Act. *Id.* ¶ 35. For example, in *Hutter v. Dig-It, Inc.*, 2009 UT 69, 219

---

4. Accordingly, we do not address or express an opinion on whether a lien based exclusively on the divorce retainers would be properly characterized as wrongful within the meaning of the Act.

P.3d 918, the Utah Supreme Court affirmed the district court's ruling that a mechanic's lien was unenforceable because it failed to comply with the preliminary notice requirements of the mechanic's lien statute. *Id.* ¶ 43. At the same time, the supreme court reversed the district court's determination that such a lien was "wrongful" within the meaning of the Act. *Id.* ¶ 52.

¶11  The property owner in *Hutter* had argued that "an unenforceable lien cannot be expressly authorized by statute" under subsection (a) of section 38-9-102(12) because "the statute only allows liens to be recorded that comply with the statutory terms." *Id.* ¶ 46. Because such an interpretation was a plausible reading of the statutory text, the supreme court looked to the Act's legislative history as an aid to ascertain the intent of the legislature. *Id.* ¶ 49. The court recited portions of the floor debate, including the sponsor's statement that the purpose of the Act "was to impose penalties on those filing common law liens on the property of public officials in retaliation for prosecution." *Id.* ¶ 50. Based on this legislative history, the court concluded that "the legislature intended that the definition of 'wrongful lien' should encompass only common law liens." *Id.* ¶ 52. The Act "does not include statutorily created liens that ultimately prove unenforceable." *Id.*

¶12  Like statutory liens, liens "signed by or authorized pursuant to a document signed by the owner of the real property" are excluded from the definition of a "wrongful lien," even if such liens ultimately prove unenforceable. *See Lindstrom v. Custom Floor Covering Inc.*, 2017 UT App 141, ¶ 21, 402 P.3d 171 (applying the *Hutter* analysis to contractual or other consensual liens as identified in Utah Code section 38-9-102(12)(c)). Here, by finding that "[o]nly the portion of lien representing the divorce case was wrongful," the district court implicitly found that the remainder of the lien was authorized by the malpractice retainer agreement signed by Ms. Dahl. However, because "the vast majority—and perhaps all—of [the lien] reflects the attorney fees

incurred in the divorce action," the court concluded that the lien was wrongful. This was error.

¶13    The $2 million debt listed in the lien may well exceed the value of the work Christensen performed on the malpractice case. But the validity of the underlying debt goes to the enforceability of the lien, not its wrongfulness. *See Pratt v. Pugh*, 2010 UT App 219, ¶¶ 11–13, 238 P.3d 1073 (holding that liens authorized by a document signed by the property owner were not wrongful at the time they were recorded even if they ultimately proved to be based on an invalid contract); *see also I-D Elec. Inc. v. Gillman*, 2017 UT App 144, ¶ 23, 402 P.3d 802 (holding that a mechanic's lien that encumbered the wrong property was not wrongful because it was authorized by statute, even if it was unenforceable).

¶14    This court drew such a distinction in *Skypark Airport Ass'n v. Jensen*, 2013 UT App 229, 311 P.3d 575. In that case, the defendants argued that their wrongful lien claims should have been submitted to the jury to determine whether the amount of assessments levied against them was permissible under the parties' contract. *Id.* ¶ 25. This court rejected that argument because a determination that the amount listed in the lien was incorrect would not render the lien wrongful. *Id.* ¶¶ 25–26. "[W]hether a lien is wrongful depends only on whether the lienor has the authority to record it," not on whether the lien accurately reflects the amount that the lienor is entitled to collect. *Id.*

¶15    Here, whether the lien exceeded the amount authorized by the malpractice retainer goes to the validity of the lien, not its wrongfulness. *See Total Restoration Inc. v. Merritt*, 2017 UT App 162, ¶ 11, 405 P.3d 778 (noting that "a lien may be invalid but not wrongful"). Because the lien was authorized by Ms. Dahl's signature on the malpractice retainer, it does not meet the definition of a wrongful lien even if it exceeded the amount of

the underlying debt. Under such circumstances, the lien may be partially unenforceable, but that does not render an otherwise authorized lien wrongful for purposes of the Act.

¶16 Notably, on appeal, Mr. Dahl does not defend the district court's ruling that a lien authorized, in part, by a valid retainer agreement can nonetheless be wrongful. Instead, he argues that the malpractice retainer, too, was invalid and asks us to affirm on that basis. Specifically, he claims that Christensen was not authorized to record a lien based on the malpractice retainer because the attorney lien statute does not authorize attorneys to file a lien against property unless that property is the subject of the lawsuit. *See* Utah Code Ann. § 38-2-7(2) (LexisNexis 2018) (authorizing an attorney lien for unpaid compensation on "any money or property owned by the client that is the subject of or connected with work performed for the client"). Mr. Dahl contends that Christensen had no "good-faith basis for claiming a statutory lien" because he knew that the property was not at issue in the malpractice case. *See Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, ¶¶ 11-13, 329 P.3d 46 (holding that, so long as the claimant has a "sufficiently plausible good-faith claim that his lien complied with the requirements of the attorney's lien statute," the lien is not subject to nullification under the Act even if it is ultimately unenforceable because the property was unconnected to the legal work performed or for any other reason).

¶17 As explained above, a lien is not wrongful if it is authorized by statute, a court order, *or* a document signed by the property owner. *See* Utah Code Ann. § 38-9-102(12). Because the lien in this case was authorized by the malpractice retainer signed by Ms. Dahl, it is excluded from the definition of "wrongful lien" under Utah Code section 38-9-102(12)(c). It is unnecessary for us to consider whether the lien was also authorized by the attorney lien statute and therefore excluded

under subsection (a) as well.[5] Accordingly, we reject the basis for affirmance urged by Mr. Dahl.

## CONCLUSION

¶18 The district court erred in concluding that the lien was wrongful even though it was authorized, at least in part, by a document signed by the property owner. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

———————

ORME, Judge (concurring):

¶19 I concur fully in the lead opinion. I write separately only to note a concern. As the lead opinion makes clear, Christensen's lien expressly attached only to Ms. Dahl's interest in the property. By its terms, it did not attach to Mr. Dahl's interest. It is not clear to me that, under any scenario, his property interest

———————

5. The district court's factual findings would also preclude us from affirming on this alternative basis. To affirm on an alternative ground, "not only must the alternative ground be apparent on the record, it must also be sustainable by the factual findings of the [district] court." *State v. Topanotes*, 2003 UT 30, ¶ 9, 76 P.3d 1159. Here, the district court listed each of the cases on which the lien was based—including the malpractice case— and then found that "[e]ach of the foregoing cases was related to the ownership and/or possession of" the encumbered property. This unchallenged factual finding provides no basis for sustaining the district court's decision on the alternative ground that Christensen lacked a "sufficiently plausible good-faith claim" that the malpractice case was related to the property. *See Bay Harbor Farm*, 2014 UT App 133, ¶ 13, 329 P.3d 46.

was impacted by the lien, wrongful or otherwise. That said, this issue appears not to have been raised by the parties below, and it was not considered by the district court. Likewise, it has not been raised as an issue on appeal. Still, I think the point is worth mentioning, lest subsequent readers of the opinion take it as authority for the proposition that a co-owner has standing to complain about a lien that affects only another co-owner's property interest. The opinion should not be taken as suggesting any such thing, given that this issue was neither raised by the parties nor considered by us in resolving this appeal.

————